Carolyn H. Cottrell (SBN 166977)
David C. Leimbach (SBN 265409)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel. 415.421.7100; Fax: 415.421.7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com

BERGER MONTAGUE PC
E. Michelle Drake (*pro hac vice*)
Joseph C. Hashmall (*pro hac vice*)
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel.: 612.594.5999; Fax: 612.584.4470

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY HOWELL, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>CHECKR, INC.,<br><br>    Defendant. | Case No.:3:17-cv-04305-SK<br><br>**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE PAYMENT AND MEMORANDUM IN SUPPORT**<br><br>Date: December 3, 2018<br>Time: 11:00 AM<br>Location: Courtroom A, 15th Floor<br>Judge: Hon. Sallie Kim |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on December 3, 2018, at 11:00 AM, in Courtroom A on the 15th Floor, at 450 Golden Gate Avenue, San Francisco, California, the Honorable Sallie Kim presiding, Plaintiff Gregory Howell and Class Counsel will respectfully move the Court to award 25% of the Settlement Fund ($1,115,000.00) in attorneys' fees, $45,967.26 to reimburse Counsel for out-of-pocket, documented expenses, $3,500 as a service payment to the Named Plaintiff, and $194,000.00 in settlement administration expenses.

## **MEMORANDUM OF POINTS & AUTHORITIES**

## **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 1

II. STATEMENT OF THE ISSUE TO BE DECIDED ................................................ 2

III. BACKGROUND ......................................................................................................... 2

    A. THE PARTIES ENGAGED IN SIGNIFICANT PRE-SUIT INVESTIGATION, LITIGATION, DISCOVERY, AND MEDIATION BEFORE REACHING THE SETTLEMENT ...................................................................................................... 2

        1. Litigation History ............................................................................ 2

        2. Summary of Plaintiff's Settled Claims Against Defendant ............. 3

    B. THE PARTIES' SETTLEMENT AGREEMENT ...................................................... 4

        1. Overview of Terms .......................................................................... 4

        2. Reaction of Settlement Class Members to the Settlement ............... 6

    C. CLASS COUNSEL'S EXPERIENCE AND EFFORTS TO SECURE BENEFITS FOR THE CLASS .................................................................................................... 7

    D. CLASS REPRESENTATIVE'S PARTICIPATION IN THE CASE ............................. 11

IV. ARGUMENT ............................................................................................................. 11

    A. THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND COSTS ..................................................................................................... 11

        1. The Percentage of the Settlement Fund Requested (25%) Is Reasonable ....................................................................................... 12

            a. The Monetary and Non-Monetary Results Obtained are Significant ................................................................... 14

            b. Effort Expended by Counsel ............................................. 15

            c. Counsel's Experience and Skill ........................................ 15

            d. Class Counsel Assumed Significant Risks in this Complex Litigation ......................................................................... 16

     e. The Reaction of the Class to Date is Positive ............................ 18

     f. Comparison with Class Counsel's Lodestar ............................ 18

   2. Class Counsel's Litigation Costs Are Recoverable ...................... 20

  B. THE REQUESTED SERVICE PAYMENT IS APPROPRIATE ........................ 21

V. CONCLUSION ............................................................................................ 22

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3    *In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) .........................13

4    *Ashker v. Sayre*, No. 05-cv-3759, 2011 WL 825713 (N.D. Cal. March 7, 2011) ..............20

5    *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) ...................18

6    *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ................13, 19

7    *Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................19

8    *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ...............................................11

9    *Bohannon v. Facebook, Inc.*, No. 12-cv-1894, 2016 WL 2962109 (N.D. Cal. May 23, 2016)

10   ...........................................................................................19

11   *Covillo v. Specialty's Café*, No. 11-cv-594, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ..18

12   *Dalton v. Capital Associated Indus.*, 257 F.3d 409 (4th Cir. 2001) ..........................17

13   *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) .............13

14   *Gambles v. Sterling Info., Inc.*, 234 F. Supp. 3d 510 (S.D.N.Y. 2017) .......................17

15   *Gauci v. Citi Mortgage*, No. 11-cv-01387, 2011 WL 3652589 (C.D. Cal. Aug. 19, 2011)

16   ...........................................................................................14

17   *Graham v. DaimlerChrysler Corp.*, 101 P.3d 140 (Cal. 2004) .................................17

18   *Greear v. Equifax Info. Servs., LLC*, 2014 WL 3809472 (E.D. Mich. Aug. 1, 2014) ..........4

19   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................12

20   *Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ............................................20

21   *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251 (1972) ....................................12

22   *Hawkins v. S2Verify*, 2016 WL 3999458 (N.D. Cal. 2016) .....................................16

23   *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) .................20

24   *Klee v. Nissan N. Am., Inc.*, No.12-cv-08238, 2015 WL 4538426 (C.D. Cal.

25   July 7, 2015) ..............................................................................19

26   *Knight v. Red Door Salons, Inc.*, No. 08-cv-1520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009)

27   ...........................................................................................13

28

*Laguna v. Coverall North America, Inc.*, 753 F.3d 918 (9th Cir. 2014) ........................ 12

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ........................ 19

*In re Magsafe Apple Power Adapter Litig.*, No. 09-cv-1911, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ........................ 19

*McIntosh v. McAfee, Inc.*, No. 06-cv-7694, 2009 WL 673976 (N.D. Cal. 2009) ........................ 19

*McKenzie v. Federal Exp. Corp.*, No. 10-cv-2420, 2012 WL 2930201 (C.D. Cal. July 2, 2012) ........................ 19

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) ........................ 2

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) ........................ 11

*In re Netflix Privacy Litig.*, No. 11-cv-379, 2013 WL 1120801 (N.D. Cal. March 18, 2013) ........................ 22

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ........................ 13

*Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010) ........................ 19

*Perma Life Mufflers, Inc. v. In'l Parts Corp.*, 392 U.S. 134 (1968) ........................ 12

*Pillsbury Co. v. Conboy*, 459 U.S. 248 (1983) ........................ 12

*Ralston v. Mortg. Investors Grp., Inc.*, No. 08-cv-536, 2013 WL 5290240 (N.D. Cal. Sept. 19, 2013) ........................ 22

*Razilov v. Nationwide Mut. Ins. Co.*, No. 01-cv-1466, 2006 WL 3312024 (D. Or. Nov. 13, 2006) ........................ 18, 21

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) ........................ 12

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3d Cir. 2005) ........................ 18

*Rodriguez v. West Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009) ........................ 21

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ........................ 13

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........................ 12, 21

*Steiner v. American Broad. Co., Inc.*, 248 Fed. Appx. 780 (9th Cir. 2007) ........................ 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2013 WL 149692 (N.D. Cal. Jan. 14, 2013) ........................ 13

-iv-

*Thieriot v. Celtic Ins. Co.*, No. 10-cv-4462, 2011 WL 1522385 (N.D. Cal.
April 21, 2011) ..................................................................................................... 18, 21

*Trustees of Const. Indust. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d
1253 (9th Cir. 2006) ..................................................................................................... 20

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ..................... 19

*Vedachalam v. Tata Consultancy Servcs. Ltd.*, No. 06-cv-0963, 2013 WL 3929129 (N.D.
Cal. July 18, 2013) ..................................................................................................... 22

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ........................... 12, 13, 18, 19

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) 11, 12, 14, 17

Rules & Statutes

15 U.S.C. § 1681, *et seq.* ................................................................................. *passim*

Fed. R. Civ. P. 23 ..................................................................................................... 1

1   **I.      INTRODUCTION**

2          Plaintiff Gregory Howell ("Plaintiff") and Class Counsel achieved a favorable

3   settlement on behalf of approximately 100,000 Settlement Class Members.  Class Counsel

4   conducted an extensive, diligent, pre-suit investigation, initiated litigation, participated in

5   informal and formal discovery, and undertook a full-day mediation followed by ongoing

6   settlement negotiations.  As a result of the Named Plaintiff's commitment to the case and

7   Class Counsel's work, Defendant Checkr, Inc. ("Defendant") has agreed to pay

8   $4,460,000.00 in non-reversionary settlement funds.   The settlement also requires

9   Defendant to undertake broad practice changes to cease reporting outdated non-conviction

10  information.  The injunctive relief afforded by the settlement is a significant achievement

11  given Defendant's dominant role as a background check company in the gig economy

12  (working on behalf of companies like Uber and DoorDash).  This injunctive relief will

13  streamline the hiring process for applicants and ensure no one is disqualified from

14  employment based on old non-convictions or low level minor offenses.  The injunctive

15  relief provided by the settlement alone represents a benefit to consumers which, when

16  monetized, is estimated to have a value of at least $9.4 million (*see* Drake Decl., Ex. C).

17         Pursuant to Fed. R. Civ. P. 23(h), and in accordance with the Court's Preliminary

18  Approval Order (ECF No. 66), Plaintiff and Class Counsel now seek approval of an award

19  of 25% of the Settlement Fund in attorneys' fees ($1,115,000.00), $45,967.26 to reimburse

20  Counsel for out-of-pocket, documented expenses, $3,500 as a service payment to Plaintiff,

21  and $194,000 in settlement administration expenses.  The amount requested for attorneys'

22  fees is less than the amount Class Counsel could have sought under the Settlement

23  Agreement, which entitles Class Counsel to also seek fees based on the value of the non-

24  monetary relief.  The requested fees and expenses are reasonable and consistent with the

25  Ninth Circuit's benchmark, measured as both a percentage of the recovery and in relation

26  to Class Counsel's lodestar.  The requested service award for Named Plaintiff Gregory

27  Howell is in line with those commonly approved in this District and appropriately

28

-1-

compensates Mr. Howell for his commitment to this case.  No Settlement Class Member has objected to the proposed awards or any other aspect of the settlement to date.[1]  Class Counsel's request should be granted.

## II.     STATEMENT OF THE ISSUE TO BE DECIDED

Whether the requested attorneys' fees, expenses, and service payment are reasonable and should be awarded.

## III.    BACKGROUND

### A.    THE PARTIES ENGAGED IN SIGNIFICANT PRE-SUIT INVESTIGATION, LITIGATION, DISCOVERY, AND MEDIATION BEFORE REACHING THE SETTLEMENT

#### 1.     Litigation History

Prior to reaching the Settlement Agreement in this matter, Class Counsel thoroughly investigated this case, interviewing dozens of individuals who had consumer reports prepared by Defendant, requesting those individuals' reports, and reviewing them once received.  Class Counsel became familiar with Defendant's unique business model and history, and also began to draw relevant conclusions about the manner in which Defendant constructed its reports and, in relevant part, failed to implement appropriate filters to ensure compliance with the obsolescence provision of the FCRA, 15 U.S.C. § 1681c.  On June 23, 2017, Plaintiff filed a Class Action Complaint against Defendant in the San Francisco County Superior Court.  (ECF No. 1.)  On behalf of himself and the proposed classes, Plaintiff sought statutory damages, plus attorneys' fees, costs, injunctive relief, and all other available relief.  (*See* Compl.)  Defendant removed the case to this Court on July 28, 2017, and answered on November 3, 2017.  (ECF No. 1, 37.)

---

[1] In accordance with the Preliminary Approval Order, Plaintiff is filing this Motion in advance of the deadline for objections so that Settlement Class Members will have an opportunity to review the Motion, if they wish to do so, before deciding whether to file an objection. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010) (stating that such motions should be filed before the deadline to object has passed).  If any objections are ultimately filed, they will be addressed in connection with the forthcoming motion for final settlement approval.

After the Complaint was filed, the parties engaged in informal and formal discovery exchanges, including written discovery and document productions. (ECF No. 55-1 ¶ 3.) Through this process, Defendant provided detailed information about its policies, procedures, and algorithms. Class Counsel also engaged in substantial and extensive negotiations with Defendant over the production of ESI from Defendant's proprietary consumer reporting database. After consultation with Class Counsel and Class Counsel's retained database expert, Defendant executed a series of queries on its database which were intended to help identify potential class members and to provide Class Counsel with information about the composition of the Class. (*Id.*)

On March 1, 2018, the parties engaged in an all-day mediation with third-party neutral Rodney Max, Esq. (ECF No. 45.) After a full day of vigorous, adversarial negotiations, the parties were unable to reach a resolution. However, after subsequent arms-length negotiations, through counsel and with the assistance of Mr. Max, the parties ultimately executed a terms sheet several weeks after mediation, and formalized a class-wide settlement, which was filed with the Court on May 21, 2018. (ECF No. 55-1.) The Court preliminarily approved the settlement on June 29, 2018 (ECF No. 66), after the parties submitted amendments to the Settlement Agreement related to the timeline of events and notices. (ECF No. 63.)

### 2.    Summary of Plaintiff's Settled Claims Against Defendant.

Plaintiff alleged that Defendant, a consumer reporting agency, violated the Fair Credit Reporting Act ("FCRA") by: (1) failing to follow reasonable procedures to assure maximum possible accuracy of the driving records it reported about consumers, 15 U.S.C. § 1681e(b), and (2) by reporting adverse information which was older than seven years and which was not a criminal conviction, 15 U.S.C. § 1681c. (*See generally* Compl.) Defendant denies the allegations and all liability with respect to all facts and claims alleged by Plaintiff. (*See, e.g.*, ECF No. 37.) The settlement resolves the second claim, regarding the reporting

1    of adverse information older than seven years, which is not a criminal conviction.[2]

2        The Settlement Class consists of approximately 100,959 consumers upon whom

3    Defendant produced a report which included records older than seven years, which included

4    the following terms in the "charge type" field: "infraction," "ordinance," "violation," "petty

5    offense," "traffic," "citation," and "civil."  (ECF No. 66 ¶ 2.)  In return for the settlement

6    benefits, the Settlement Class Members will release only claims arising under 15 U.S.C. §

7    1681c and analogous state laws.[3]  The settlement does not release any other claims.

8        **B.    THE PARTIES' SETTLEMENT AGREEMENT**

9            **1.    Overview of Terms**

10       First, in connection with the settlement of the litigation, Defendant is providing

11   significant non-monetary relief by implementing several business practice changes that will

12   address Plaintiff's claims.  (ECF No. 55-2 ¶ 5.)  Defendant will (1) not report low-level

13   offenses older than seven years for at least 18 months, regardless of whether such low-level

14   offenses are criminal in the relevant jurisdiction, (2) if, after that time period, Defendant

15   decides to resume reporting low-level *criminal* offenses that are older than seven years, it

16   will use data provided by Class Counsel from the settlement claims process, and consult an

17   expert regarding its methodology in resuming reporting these types of records.   This

18   injunctive relief is significant, and likely could not have been achieved in the litigation

19   context given that there is disagreement among courts as to whether injunctive relief is even

20   available under the FCRA.  *See Greear v. Equifax Info. Servs., LLC*, No. 14-11988, 2014

21   WL 3809475, at *1 (E.D. Mich. Aug. 1, 2014) (citing cases).  This injunctive relief is

22   valuable to Class Members, many of whom are seeking jobs as drivers for companies like

23   Uber and DoorDash.  The relief ensures that old traffic infractions, as well as petty offenses

24   _____

25   [2] After extensive discussion with Defendant about the merits of the §1681e(b) claims, the parties agreed to resolve only the §1681c claim on a class basis.  As part of the Settlement

26   Agreement, Plaintiff has agreed to release all individual claims.

27   [3] In general, §1681c preempts most state laws on this issue, although there is a carve-out for state laws already in affect at the time the relevant FCRA provisions were passed.  15

28   U.S.C. § 1681t(b)(1)(E).

-4-

1    and other minor matters will not appear on Class Members' background reports.  This relief

2    not only ensures that Class Members will not lose employment opportunities based on this

3    old information, it also streamlines the hiring process because it will render many Class

4    Members' reports "clear," meaning that Defendant's clients can forego manual review, and

5    that Class Members can avoid the attendant hiring delay.  Plaintiff's expert has estimated

6    that this injunctive relief is worth at least $9.4 million.  (Drake Decl., Ex. C.)

7          Second, Defendant will create a common fund consisting of $4,460,000.00 for the

8    benefit of the Settlement Class.  (ECF No. 55-2 ¶ 1.21.)  This fund will be distributed *pro*

9    *rata* to all Settlement Class Members eligible to receive a payment, after deductions for any

10   Court-approved attorneys' fees, costs, service award, and settlement administration costs.

11   (*Id.* ¶ 8.5.2.)  No portion of the fund will revert to Defendant.

12         All Settlement Class Members who receive a payment will receive the same amount.

13   However, some Settlement Class Members will receive payments automatically, while

14   others are required to submit a Claim Form.  Whether a Class Member is required to file a

15   Claim Form is based on the jurisdiction of the low-level offense older than seven years

16   reported by Defendant, as well as whether or not the consumer disputed the information

17   successfully.  Over half of the Settlement Class Members will receive a payment without

18   being required to file a Claim Form.  Specifically, Settlement Class Members will receive

19   a payment without being required to file a Claim Form if they are individuals

20         a)  about whom Defendant reported an "infraction" older than seven years from

21             North Carolina, Florida, or Virginia[4]; **and/or**

22         b)  who had a low-level offense, older than seven years, reported from any

23             jurisdiction and who successfully disputed that information with Defendant.

24             (*Id.* ¶ 1.4.)

25

26

---

27   [4] In these states, all "infractions" are non-criminal.

28

Remaining Settlement Class Members[5] are required to return a simple Claim Form to be *eligible* for a payment. However, those Settlement Class Members will only actually be paid if, after review, Class Counsel determines that the low-level offense that was reported is not "criminal" under applicable state law.[6] In order to enable Class Counsel to make this determination, Defendant is producing redacted versions of all claimants' consumer reports, showing the low-level offense information that triggered the claimant's Class membership. Class Counsel then reviews the relevant record, conducts the necessary research to determine whether that record is non-criminal in nature, and records such findings. If Defendant ever begins to report low-level offenses older than seven years, Defendant is obligated to use this information, and to consult with an expert to ensure that only criminal convictions are reported.

To date, over 4,000 Claim Forms have been received. The review of such claims is ongoing. Class Counsel will submit a full report of Class Counsel's claims analysis in connection with the forthcoming Motion for Final Settlement Approval.

No portion of the Settlement Fund will revert to Defendant in any circumstance. If any settlement checks are not cashed, funds associated with those uncashed checks will be donated to Public Justice and the Southern Center for Human Rights, both of which are national nonprofit legal advocacy organizations who do work to advance enforcement of the FCRA and/or in service of assisting individuals who are facing collateral consequences as a result of interactions with the criminal justice system. (*Id.* ¶ 8.8.)

### 2. Reaction of Settlement Class Members to the Settlement

On July 26, 2018, JND Class Action Administration emailed Notice to the Settlement Class Members in accordance with the procedures outlined in the Settlement Agreement. (Admin. Decl. ¶ 9.) On July 24, 2018, JND also activated the Settlement

---

[5] Namely, individuals who did not successfully dispute and/or who had a low-level offense older than seven years reported where such low-level offense was something other than an infraction in North Carolina, Florida, or Virginia, will be required to file a Claim Form.

[6] The FCRA allows criminal convictions to be reported indefinitely.

-6-

Website, www.HowellSettlement.com, and a toll-free telephone line for Class Members to utilize.  (*Id.* ¶¶ 15, 18.)  As of October 8, 2018, JND had sent 97,353 total Email Notices (includes Class Members that have multiple email addresses), and 77,354 Mail Notices (to those Class Members whose Email Notice was either undeliverable or unopened).  (*Id.* ¶¶ 9, 11-14.)  Further, on August 13, 2018, JND sent a Reminder Email Notice to those whose initial Email Notice was still unopened.  (*Id.* ¶ 10.)

As of October 8, 2018, there has been only **one** opt-out and **zero** objections received. (*Id.* ¶¶ 20, 22.)  The postmark deadline for opt-outs and objections is October 24, 2018. Additionally, for the group of Settlement Class Members required to return a Claim Form, the claims filing rate, as of October 8, is 9.6%. This is a comparable claims rate to those in similar class action settlements, and Class Members still have until October 24, 2018 to continue to submit claims.

### C.   CLASS COUNSEL'S EXPERIENCE AND EFFORTS TO SECURE BENEFITS FOR THE CLASS.

Class Counsel are experienced and well-established FCRA litigators.  The specific qualifications of Class Counsel are set forth in the accompanying Declaration of E. Michelle Drake, and Declaration of Carolyn Cottrell.  As a result of their experience in this area, Class Counsel have been able to efficiently and effectively litigate this action, and had the credibility necessary to negotiate a fair and reasonable settlement on behalf of the Class. Further, Class Counsel have the necessary knowledge and background to handle the review process necessary to determine the non-Auto Pay Class Members' eligibility for payment, and to gather data during that process to assist Defendant in changes to its reporting procedures of the low-level offenses.

Class Counsel have worked without compensation or reimbursement for their time and have paid, without reimbursement, all out-of-pocket expenses necessary to litigate and settle this case.  (Drake Decl. ¶ 13.)  Before taking on this case, Class Counsel negotiated a customary one-third contingency fee with Plaintiff, with the understanding that this amount

was an appropriate incentive for Class Counsel to take on the financial risks involved in the representation.  (*Id.*)  Class Counsel also agreed to advance all costs of this litigation.  (*Id.*)  Plaintiff and Class Counsel agreed that Class Counsel would receive reimbursement for their costs from the value of a successful judgment or settlement, after a deduction for the one-third contingency fee.  (*Id.*)  In the event that Class Counsel did not successfully resolve this matter, they would have been paid nothing.

Although the parties settled this case in the pretrial stage, Class Counsel have invested a substantial amount of time and resources investigating and litigating this action.  Much of the work done by Class Counsel is not evident based solely on a review of the docket in this matter, as it took place outside of the courtroom.

First, Class Counsel extensively researched and vetted the claims, and potential plaintiffs, to be brought in this litigation.  Class Counsel reviewed all potential clients and claims, worked with those potential clients to request their consumer files from Defendant in order to review all relevant paperwork, and diligently strove to ensure the Class Members were represented by an appropriate class representative, and that the claims brought were sufficiently documented.  (Drake Decl. ¶ 15.)

Second, Class Counsel and Defendant exchanged informal and formal discovery prior to the mediation.  This exchange included written requests and responses, document productions, narrative descriptions from Defendant of algorithms and policies, and expert review of potential queries to use to identify class members.  (*Id.* ¶ 16.)

Third, Class Counsel have committed to systematically reviewing all Settlement Class Members' reports who have returned a Claim Form.  Class Counsel have conducted state-by-state research on each low-level offense record in the reports, meticulously gathered data and not only made determinations for payment eligibility purposes, but also ensuring that their conclusions are memorialized for Defendant's future use should it decide to return to reporting low-level offenses after the agreed-upon eighteen month prohibition has passed.  This process has been performed methodically, with Class Counsel

downloading each report from the Settlement Administrator's fileshare, identifying the state for which the reported offense(s) occurred (to date, this has covered 42 states), recording each claimant's Unique ID number that has been assigned and organizing the information in a data-compilation spreadsheet, identifying the report date and the date(s) of the dispositions(s) of the offense(s), calculating whether the offense(s) predates the report date by more than seven years and recording determination made, identifying the applicable state statute (and/or various state, local, and municipal codes if a statute is not noted on the report), and researching relevant law to determine whether the offense is a "crime" that resulted in a guilty disposition, recording the statute number and definition and/or caselaw interpreting the statute on the particular offense, and making a determination on the report. (*Id.* ¶ 17.)  The determination regarding the reported offense(s) status is then entered on the Settlement Administrator's claims tracking spreadsheet.  This process is ongoing, with Defendant uploading reports for claimants on a rolling basis, and Class Counsel reviewing as they are uploaded.  The Claims Deadline is October 24, 2018, and the uploading and review and evaluation process will continue after that deadline.  Class Counsel intend to supplement this Motion with further detail regarding time expended on this process, and the results of the claims analysis, prior to the final approval hearing.

Further, other tasks performed by Class Counsel included, but were not limited to, (1) communicating regularly with Plaintiff, (2) drafting and filing the complaint, (3) meeting and conferring with Defendant's counsel regarding discovery issues, (4) researching and drafting a mediation brief which canvassed the applicable law and the risks of litigation, both to certification and the merits, (5) preparing for and participating in the mediation session, (6) engaging in extended settlement negotiations with Defendant's counsel, (7) exchanging drafts of, finalizing, and amending the Settlement Agreement and Notices, (8) researching and drafting the preliminary approval brief, and (9) responding to calls from Settlement Class Members with questions about the settlement.  (*Id.* ¶ 8.)

Class Counsel anticipates contributing additional time and effort to the case leading

up to, and after, the settlement is finally approved.  This will include, (1) continuing to review, analyze, conduct relevant research, and record findings from, the claiming Settlement Class Members' reports as they are submitted by Defendant, (2) continuing to oversee the administration of the settlement, (3) researching and drafting final approval papers, (4) preparing, travelling, and appearing, for the final fairness hearing, and (5) continuing to respond to Settlement Class Members' inquiries regarding the settlement.  (*Id.* ¶ 9.)

Class Counsel's fee entries demonstrate the amount of time devoted to these tasks, and the calculation of Class Counsel's lodestar.  (*See* Drake Decl., Ex. D; Cottrell Decl., Ex. 1.)  To date, Class Counsel have expended 963.7 hours on this matter, resulting in $426,970.95 in lodestar.  (*Id.*)  The requested award is 25% of the Settlement Fund as attorneys' fees ($1,115,000), which results in a modest 2.6 multiplier of Class Counsel's lodestar to date, not including the future time to be expended seeing this matter through to completion, which, as outlined below, weighs in favor of the requested amount.  Further, despite the Settlement Agreement, and the Notice sent to the Class, contemplating Class Counsel requesting 25% of the value of the injunctive relief as well, Class Counsel have elected to seek a fee equal to 25% of the monetary relief provided under the settlement only, which amounts to 8% of the total value of the settlement relief.

As noted above, Class Counsel will continue to receive reports for claimants from Defendant, and will continue to conduct the detailed evaluation process.  Class Counsel will supplement this Motion prior to the final approval hearing to provide updated numbers for total hours and lodestar expended.

To date, Class Counsel have also incurred $45,967.26 in out-of-pocket litigation expenses.[7]  (Drake Decl., Ex. E; Cottrell Decl., Ex. 2.)  All of these costs were necessarily

---

[7] 20.   The costs incurred by Class Counsel include case tracking expenses ("Courtlink"). Class Counsel's actively monitors all new FCRA filings.  Class Counsel also monitors developments on a daily basis on FCRA cases that touch on relevant issues.  These efforts enabled Class Counsel to negotiate a substantial and meaningful settlement of this case, by

1  incurred and are of the type typically reimbursed by paying clients.  (*Id.*)

2        **D.**     **CLASS REPRESENTATIVE'S PARTICIPATION IN THE CASE.**

3        The Class Representative has played a valuable role in bringing this litigation to a

4  successful conclusion.   Among other things, Plaintiff has: (1) assisted with Counsel's

5  investigation of the facts, (2) reviewed the complaint prior to filing, (3) provided documents

6  to Counsel, (4) consulted with Counsel throughout settlement negotiations, (5) reviewed

7  and approved the final Settlement Agreement, and (6) regularly communicated with Class

8  Counsel and provided input and answers to questions whenever needed.  (Drake Decl. ¶

9  21.)

10        In sum, Plaintiff has actively engaged in the litigation and settlement, and has stayed

11  abreast of developments in the case.  The settlement's allowance of a service payment up

12  to $3,500 reflects the Class Representative's initiative in pursuing this action, the risks

13  associated with attaching his name to the litigation and the time he has invested.

14  **IV.**    **ARGUMENT**

15       **A.**     **THE COURT SHOULD APPROVE THE REQUESTED ATTORNEYS' FEES AND**
16               **COSTS**

17        It is well-settled that "a lawyer who recovers a common fund for the benefit of

18  persons other than himself or his client is entitled to a reasonable attorney's fee from the

19  fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v.*

20  *Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970).  "[T]hose who benefit from the creation of

21  the fund should share the wealth with the lawyers whose skill and effort helped create it."

22  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).  This

23  principle is particularly important in complex litigation, where private enforcement is a

24  _____

25  comparing it to other FCRA cases, and by distinguishing it from other cases that settled for
   less, including numerous cases that involved unpublished opinions.  The research also
26  allowed Class Counsel to effectively assess the reasonableness of the recovery in this matter
   and motivated Class Counsel to negotiate a settlement.  The expenses for this tracking are
27  divided among Counsel's active FCRA cases each month. (Drake Decl. ¶ 20.)

28

1   necessary component of legal compliance.  *See, e.g.*, *Pillsbury Co. v. Conboy*, 459 U.S. 248,

2   262-3 (1983); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 331 (1979); *Hawaii v. Standard Oil*

3   *Co. of Cal.*, 405 U.S. 251, 266 (1972); *Perma Life Mufflers, Inc. v. In'l Parts Corp.*, 392

4   U.S. 134, 139 (1968).  Fee awards in successful cases, such as this one, encourage class

5   actions, and thereby promote private enforcement and compliance with federal consumer

6   protection laws, such as the FCRA.

7       Courts have encouraged litigants to resolve fee issues by agreement.  *See Hanlon v.*

8   *Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Federal Rule of Civil Procedure 23(h)

9   expressly states that "the court may award reasonable attorney's fees and nontaxable costs

10  that are authorized by law or by the parties' agreement."  Further, the Ninth Circuit has held

11  that "the court need not inquire into the reasonableness of the fees even at the high end with

12  precisely the same level of scrutiny as when the fee amount is litigated."  *Staton v. Boeing*

13  *Co.*, 327 F.3d 938, 966 (9th Cir. 2003).  This Circuit recognizes that "the parties are

14  compromising precisely to avoid litigation."  *Laguna v. Coverall North America, Inc.*, 753

15  F.3d 918, 922 (9th Cir. 2014), *vacated on other grounds*, 772 F.3d 608 (9th Cir. 2014).

16      Here, the parties' Settlement Agreement, which was negotiated under adversarial

17  and non-collusive circumstances, provides for a reasonable award of attorneys' fees of up

18  to 25% of the Settlement Fund (as well as 25% of the injunctive relief value, but Class

19  Counsel does not seek that here) and reimbursement of out-of-pocket costs, and the

20  requested fees and costs should be approved.

21          **1.    The Percentage of the Settlement Fund Requested (25%) Is**
             **Reasonable.**
22
            The Ninth Circuit has approved two methods of assigning attorneys' fees in common
23
24  fund cases: the "percentage of the fund" method and the "lodestar" method.  *Vizcaino v.*

    *Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re. Wash. Pub. Power*
25
    *Supply*, 19 F.3d at 1295-96).  Under the percentage method, the court may award class
26
27  counsel a percentage of the common fund recovered for the class.  *Id.*  The percentage

28  method is particularly appropriate in common fund cases, because "the benefit to the class

-12-

is easily quantified." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  The Ninth Circuit's approved "benchmark" percentage is exactly what Class Counsel is requesting here – 25%.  *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  Courts in this Circuit often award even more than the benchmark percentage, which weighs in favor of Class Counsel's request here.  *See Knight v. Red Door Salons, Inc.*, No. 08-cv-1520, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) ("in most common fund cases, the award exceeds [the] benchmark"); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("nearly all common fund awards range around 30%"); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33% of fund); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2013 WL 149692 (N.D. Cal. Jan. 14, 2013) (30%).

Further, "[i]n calculating the overall settlement value for purposes of the 'percentage of the recovery' approach, Courts include the value of both the monetary and non-monetary benefits conferred on the Class." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-8405, 2015 WL 10847814, *15 (S.D.N.Y. Sept. 9, 2015) (collecting authority).  As noted above, here, Class Counsel are limiting their fee request to 25% of the monetary relief only provided by the settlement, despite the Settlement Agreement and Class Notices contemplating a request for 25% of the value of the injunctive relief as well.  If the non-monetary relief, which Plaintiff's expert has estimated to be worth at least $9.4 million, is included, Class Counsel's fee request represents only 8% of the overall value of the settlement.  (Drake Decl., Ex. C.)

When analyzing a fee request under the percentage method, courts in this Circuit look at: (1) the result obtained; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class; (8) non-monetary benefits; and (9) comparison with counsel's lodestar.  *See Vizcaino*, 290 F.3d at 1048-50.  Applied here, all of these factors support Class Counsel's request for 25% of the Settlement Fund.

a.   The Monetary and Non-Monetary Results Obtained Are Significant

Plaintiff and Class Counsel achieved a noteworthy result in this matter, especially in light of the relatively small individual amounts at issues (the FCRA provides for statutory damages of $100 - $1,000).   The monetary relief achieved for the Settlement Class will result in payments of approximately $79 gross recovery per eligible Settlement Class Member, assuming a 10% claims rate for the non-Auto Pay group.[8]  Further, the settlement provides substantive non-monetary relief that directly addresses the claims at issue in the case, that has been valued by an expert at $9.4 million.  (*See supra* § III.B.1, Drake Decl., Ex. C.)  Given that there is a disagreement about whether injunctive relief is even available to private plaintiffs under the FCRA, the non-monetary relief in particular is remarkable, and may achieve more for Class Members than could have ever been achieved in litigation. *See Gauci v. Citi Mortgage*, No. 11-cv-01387, 2011 WL 3652589, at *3 (C.D. Cal. Aug. 19, 2011) ("District courts in the Ninth Circuit agree that a private party may not obtain injunctive relief under the FCRA.").

The monetary relief compares favorably with similar settlements.  *See, e.g.*, *King v. Gen. Info. Servs.*, No. 10-cv-6850, ECF No. 124 (E.D. Pa. Nov. 4, 2014) (approving §1681c settlement providing class members each $50); *Haley v. TalentWise, Inc.*, No. 13-cv-1915, ECF No. 88 (W.D. Wash.) (final approval of settlement paying class members $50 for claims based on reporting outdated charges); *Smith v. A-Check*, No. 16-cv-174, ECF No. 66 (C.D. Cal. 2017) (approval of settlement with tiered class based on whether outdated reported information was criminal or not, with reporting of outdated non-criminal information resulting in $28 per class member, and $114 for reporting of outdated criminal non-convictions, such as dismissals).

---

[8] There are 42,030 Class Members in the claims-made group, and as of October 8, 4,028 Claim Forms have been received, resulting in a 9.6% claims rate.  Class Counsel's review of claims made to date shows that about 55% of claims are eligible for payment (Drake Decl. ¶ 22). Given that there are just over two weeks remaining prior to the Claims Deadline, Class Counsel assumes an ultimate 10% claims rate, with 55% being eligible for a payment for purposes of this calculation.  If the requested attorneys' fees and costs are granted, Class Members will receive net checks for approximately $55.00.

-14-

1    Accordingly, these factors weigh in favor of granting the requested fee award.

2                              b.   Effort Expended by Counsel

3    This action was vigorously investigated, litigated, and negotiated by both sides

4    before the parties settled.  As described above, the parties engaged in diligent pre-suit

5    investigation, formal and informal discovery, and informed settlement negotiations.

6    Further, Class Counsel have been methodically reviewing, analyzing, and researching each

7    claimant's report as the reports are provided by Defendant.  These efforts will benefit not

8    only the current claimants, but also the subjects of future consumer reports prepared by

9    Defendant, as Defendant will be required to review Class Counsel's data prior to reporting

10   low-level criminal offenses older than seven years in the future.  Given the time and

11   resources devoted to investigating, litigating and settling this action, as well as the post-

12   preliminary approval work done by Class Counsel, this factor weighs in favor of the

13   requested award.

14                             c.   Counsel's Experience and Skill

15   Class Counsel are highly experienced in complex class action litigation and

16   consumer litigation in general.  (*See* Drake Decl., Exs. A, B.)  Berger Montague PC was

17   founded in 1970, and has been concentrated on representing plaintiffs in complex class

18   actions ever since.  (*Id.*, Ex. A.)  The firm has been recognized by courts for its skill and

19   experience in handling major complex litigation.  (*Id.*)  Berger has been recognized by The

20   National Law Journal in 11 of the last 15 years for its "Hot List" of top plaintiffs' oriented

21   litigation firms in the nation.  (*Id.*)  Lead counsel from Berger, E. Michelle Drake is a former

22   public defender, with a deep understanding of how criminal convictions and non-

23   convictions work in the real world, and a demonstrated commitment to issues related to

24   criminal justice.  (*Id.*)  She is currently the co-chair of the firm's Consumer Protection, Fair

25   Debt and Fair Credit, and Technology, Privacy & Data Breach practice groups.  (*Id.*)  Her

26   practice focuses on protecting consumers' rights when they are harmed by improper credit

27   reporting, and other illegal business practices.  (*Id.*)  She currently serves as lead or co-lead

28

-15-

counsel in dozens of class action consumer protection cases in federal and state courts across the country, including numerous cases brought pursuant to the Fair Credit Reporting Act. (*Id.*) She frequently speaks on FCRA issues, and has authored a book chapter on criminal background checks. (*Id.*) Joseph C. Hashmall, also from Berger, has concentrated his practice on FCRA litigation as well. Both are counsel of record in many active FCRA cases throughout the country. (*Id.* ¶ 22.) Elizabeth Peterson, who is working extensively on reviewing claim validity, clerked in a state trial court for three years, and gained substantial criminal and civil experience there. (*Id.* ¶ 23.) Schneider Wallace Cottrell Konecky Wotkyns LLP is similarly dedicated to representing consumers in class actions. (*See* Cottrell Decl.)

Class Counsel's substantial litigation skills were necessary to bring this action to a successful conclusion. Counsel thoroughly investigated and vetted the potential claims and plaintiffs, analyzed documents and data and used them to Plaintiff's advantage at settlement negotiations, and ultimately settled this matter on terms that are highly favorable to the Settlement Class.

           d. <u>Class Counsel Assumed Significant Risks in this Complex Litigation</u>

The requested fee award is even more reasonable considering the complexity of the litigation, and the risks that Class Counsel assumed in undertaking the representation on a contingent fee basis. Class action litigation is inherently complicated and time-consuming. On top of the demands that come with this type of litigation, Class Counsel also had to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee recovery of any kind.

Plaintiff in this case faced risks beyond generalized litigation risk: Plaintiff and the Class faced risks from the Supreme Court's recent *Spokeo* decision, as not all Class Members have lost jobs, and not all Class Members can establish they lost jobs specifically because of the reporting of the information at issue in this case. *But see Hawkins v. S2Verify*, Case No. 15-03502, 2016 WL 3999458 *9 (N.D. Cal. 2016) (finding standing for

-16-

to assert 1681c claims without proof of job loss); *Gambles v. Sterling Infosystems, Inc.*, 234 F. Supp. 3d 510, 521 (S.D.N.Y. 2017) (same).  Further, the FCRA is not a strict liability statute.  *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 417 (4th Cir. 2001).  An FCRA plaintiff can recover only where the defendant has acted negligently or willfully, and where the defendant's violation was at most negligent, recovery is limited to actual damages.  *See* 15 U.S.C. §§ 1681n(a)(1), 1681o(a)(1).  Because he did not allege actual damages, in order to recover anything, Plaintiff would have had to prove not only that Defendant violated the FCRA, but that it did so willfully.  Throughout this litigation, Defendant has vigorously contested that it willfully violated the FCRA.  Defendant has a robust program to ensure that acquittals and other non-convictions are not reported after seven years; but failed to filter out certain non-criminal offenses after that time period.  Defendant would have colorable arguments that such a failure was inadvertent, and therefore not willful. Additionally, Defendant would have argued that manageability of the Class was an obstacle to certification , as the Court would need to have taken judicial notice of whether certain offenses were criminal or non-criminal across the laws of all 50 states.  Plaintiff believes that these arguments could have been overcome in litigation, but also believes they demonstrate that there were serious obstacles to recovery in this case.

The Ninth Circuit has recognized the importance of rewarding attorneys who take cases on a contingency basis.  *In re Wash. Pub. Power Supply*, 19 F.3d at 1299 ("[c]ontingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."); *see also Graham v. DaimlerChrysler Corp.*, 101 P.3d 140, 157(Cal. 2004) ("[a] contingent fee must be higher than a fee for the same legal services paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.") (internal citations omitted).

-17-

1  Thus, the complexity and risks involved in this matter weigh in favor of Class

2  Counsel's requested fees.

3  e.  The Reaction of the Class to Date is Positive

4  Notice of the settlement, including the proposed amounts to be requested in fees

5  (which contemplated a higher fee request than what Counsel ultimately is seeking), costs,

6  and service payment, was emailed on July 26, 2018 to the Settlement Class, and since then,

7  reminder emails and postcard notices were also sent.  Not a single class member has filed

8  an objection to the contemplated fee request to date, and only one has opted-out.  This factor

9  supports the requested award, especially as Class Counsel seeks a smaller award than the

10  limit that was included in the notices sent to the Class.  *Barbosa v. Cargill Meat Solutions*

11  *Corp.*, 297 F.R.D. 431, 448 (E.D. Cal. 2013) (finding only one opt-out and zero objections

12  from 1,837 class members favored awarding 33% of the common fund); *Razilov v.*

13  *Nationwide Mut. Ins. Co.*, No. 01-cv-1466, 2006 WL 3312024, at *3 (D. Or. Nov. 13, 2006)

14  (finding 27 opt-outs out of 60,000 class members weighed in favor of granting fee award in

15  excess of 25% benchmark); *Thieriot v. Celtic Ins. Co.*, No. 10-cv-4462, 2011 WL 1522385,

16  at *6 (N.D. Cal. April 21, 2011) ("[t]he fact that no members of the 390-person class

17  objected to the proposed 33% fee award – which was also communication in the notice –

18  supports an increase in the benchmark rate.").

19  f.  Comparison with Class Counsel's Lodestar

20  A comparison with Class Counsel's lodestar further demonstrates that the requested

21  fee is reasonable.  *See Vizcaino*, 290 F.3d at 1050 ("the lodestar calculation can be helpful

22  in suggesting a higher percentage when litigation has been protracted").  The "cross-check

23  calculation need entail neither mathematical precision nor bean counting . . . [courts] may

24  rely on summaries submitted by the attorneys and need not review actual billing records."

25  *Covillo v. Specialty's Café*, No. 11-cv-594, 2014 WL 954516, at *21-22 (N.D. Cal. Mar. 6,

26  2014) (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-7 (3d Cir. 2005)).

27

28

The lodestar method is calculated by multiplying "the number of hours . . . reasonably expended on the litigation . . . by a reasonable hourly rate." *In re Bluetooth Headset*, 654 F.3d at 941.  In considering rates, courts examine the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  Here, Class Counsel's hourly rates are comparable to those approved in this District, and in California in general.  *See In re Magsafe Apple Power Adapter Litig.*, No. 09-cv-1911, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) ("In the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240") (citing cases); *see also Bohannon v. Facebook, Inc.*, No. 12-cv-1894, 2016 WL 2962109, at *5-6 (N.D. Cal. May 23, 2016) (approving attorney hourly rates of $525-800); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 591-92 (N.D. Cal. 2015) (approving attorney rates from $335 - 685); *Klee v. Nissan N. Am., Inc.*, No. 12-cv-08238, 2015 WL 4538426, at *13 (C.D. Cal. July 7, 2015) (approving rates of $370 to $695); *Parkinson v. Hyundai Motor America*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010) (approving rates of $445 – 675).

Class Counsel's detailed fee records are attached to the Drake and Cottrell Declarations, with redactions for privilege.  (Drake Decl., Ex. D; Cottrell Decl., Ex. 1.)  To date, Counsel's cumulative lodestar is $426,970.95.  (*Id.*)  The lodestar cross-check of the percentage requested thus results in a multiplier of 2.6.  Multipliers of 1 to 4 are commonly awarded in complex class action cases in this Circuit.  *See Vizcaino*, 290 F.3d at 1051, n. 6 (finding that in approximately 83% of cases surveyed by the court, the multiplier was between 1.0 and 4.0 and affirming a multiplier of 3.65); *McIntosh v. McAfee, Inc.*, No. 06-cv-7694, 2009 WL 673976, at *2 (N.D. Cal. 2009) (recognizing a range from "2 to 4 or even higher"); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("[m]ultipliers in the 3-4 range are common"); *Steiner v. American Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming multiplier of 3.65); *McKenzie v. Federal*

-19-

*Exp. Corp.*, No. 10-cv-2420, 2012 WL 2930201 (C.D. Cal. July 2, 2012) (approving multiplier of 3.2).  As Class Counsel's efforts in reviewing the claimants' reports and conducting the necessary research, data gathering and analysis continues, Class Counsel will provide the Court with updated lodestar information prior to the final approval hearing. Even without the future time to be expended accounted for yet, the lodestar cross-check confirms the reasonableness of the requested fee award.

### 2.    Class Counsel's Litigation Costs Are Recoverable

Class Counsel also seek, pursuant to the Settlement Agreement, reimbursement of documented, out-of-pocket, expenses incurred in litigating and settling this matter.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (counsel should recover "those out-of-pocket expenses that would normally be charged to a fee paying client") (internal citations omitted); *Ashker v. Sayre*, No. 05-cv-3759, 2011 WL 825713, at *3 (N.D. Cal. March 7, 2011) (finding "costs of reproducing pleadings, motions and exhibits are typically billed by attorneys to their fee-paying clients" and are thus reimbursable); *Trustees of Const. Indust. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006) (legal research costs reimbursable); *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177-8 (S.D. Cal. 2007) (mediation expenses, expert fees, legal research, copies, postage, filing fees, messenger, and federal express costs reimbursable); *Marhoefer*, 24 F.3d at 19 (postage costs reimbursable).

As Counsel's expense records show, all of the costs incurred were reasonable and necessary to the successful conclusion of this litigation.  (*See* Drake Decl., Ex. E; Cottrell Decl., Ex. 2.)  These costs include: filing fees, case tracking, legal research, service of process, expert fees, mediation expenses, and FedEx costs.  These types of expenses are routinely reimbursed by the courts as noted above, thus Counsel's requested costs of $45,967.26 should be awarded.

In addition, JND Class Action Administration, who this Court appointed to administer the settlement, reasonably expects to incur $194,000 by the end of the settlement

administration process.[9]  This amount is in line with the industry, as JND was chosen after a competitive bidding process and should be approved to be paid from the Settlement Fund.

### B.    THE REQUESTED SERVICE PAYMENT IS APPROPRIATE

The Ninth Circuit has recognized that named plaintiffs are eligible for reasonable service awards.  *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action cases.").  Such awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and to recognize their willingness to act as private attorneys general.  *Id.* at 958-59.

In evaluating requests for service awards, the court should consider "relevant factors including 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation."  *Thieriot*, 2011 WL 1522385 at *7 (quoting *Staton*, 327 F.3d at 977).  Here, all of these factors support the requested awards. Plaintiff has expended time and effort in this matter, consistently putting the class members' interests first.  Plaintiff stayed abreast of developments in the case, provided documents in the discovery process, reviewed relevant pleadings, and evaluated the Settlement Agreement.  As a result of Plaintiff's efforts, and his willingness to pursue this action, substantial benefits have been achieved on behalf of the Settlement Class.

Moreover, the requested service payment of $3,500 has received no objections and is relatively modest compared to awards granted in other complex litigation in this Circuit. *See, e.g.*, *Razilov*, 2006 WL 3312024 at *2-4 (approving incentive award of $10,000);

---

[9] JND's original proposal was lower than what it now reasonably expects to incur by the end of the settlement administration process.  The cost has understandably increased as the original proposal did not contemplate, or underestimated: (1) the Reminder Email Notice, (2) the ultimate number of Mail Notices needed to be sent, (3) the extent of the address research required, (4) the number of Class Member inquiries, (5) the number of paper claim forms received, (6) claim validation and electronic storage of same, (7) projected final number of payments to issue, and (8) the overall need for project management.  (Admin. Decl. ¶ 28.)

*Ralston v. Mortg. Investors Grp., Inc.*, No. 08-cv-536, 2013 WL 5290240, at *5 (N.D. Cal. Sept. 19, 2013) (approving service payment of $12,500); *In re Netflix Privacy Litig.*, No. 11-cv-379, 2013 WL 1120801, at *11 (N.D. Cal. March 18, 2013) (approving service awards of $6,000 for each named plaintiff); *Vedachalam v. Tata Consultancy Servcs. Ltd.*, No. 06-cv-0963, 2013 WL 3929129, at *7 (N.D. Cal. July 18, 2013) (approving service awards of $25,000 and $35,000).

Accordingly, the service award is fully justified, reasonable, and should be awarded.

## V.     CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court grant Class Counsel's requested awards of 25% of the Settlement Fund as attorneys' fees ($1,115,000.00), $45,967.26 in costs, service payment to Plaintiff of $3,500, and $194,000 in settlement administration expenses.


Date: October 8, 2018                         BERGER MONTAGUE PC


                                              /s/E. Michelle Drake
                                              E. Michelle Drake (*pro hac vice*)

                                              ATTORNEYS FOR PLAINTIFF