Carolyn H. Cottrell (SBN 166977)
David C. Leimback (SBN 265409)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel. 415.421.7100; Fax: 415.421.7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com

BERGER MONTAGUE PC
E. Michelle Drake (*pro hac vice*)
Joseph C. Hashmall (*pro hac vice*)
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel.: 612.594.5999; Fax: 612.584.4470
emdrake@bm.net
jhashmall@bm.net

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY HOWELL, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHECKR, INC.,<br><br>Defendant. | Case No.:3:17-cv-04305-SK<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND MEMORANDUM IN SUPPORT [UNOPPOSED]**<br><br>Date: December 3, 2018<br>Time: 11:00 AM<br>Courtroom: A, 15th Floor<br>Judge: Hon. Sallie Kim |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on December 3, 2018, at 11:00 AM, in Courtroom A on the 15th Floor, at 450 Golden Gate Avenue, San Francisco, California, the Honorable Sallie Kim, U.S. Magistrate Judge, presiding, Plaintiff will respectfully move the Court to grant final approval to the parties' settlement and enter final judgment in this action.

Defendant does not oppose this Motion.

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.   STATEMENT OF THE ISSUE TO BE DECIDED ................................................... 1

III.   RELEVANT FACTS ................................................................................................... 2

    A.   Summary of Claims and Litigation History ................................................... 2

    B.   Key Settlement Terms ..................................................................................... 3

    C.   Class Notice and Reaction .............................................................................. 5

    D.   Relief to be Provided After Final Approval .................................................. 6

IV.   ARGUMENT ............................................................................................................... 6

    A.   The Relief Provided by the Settlement is Significant .................................... 7

    B.   Plaintiff and the Settlement Class Would Have Faced Substantial Risks in the Absence of a Settlement ................................................................. 10

    C.   The Stage of the Proceedings and Amount of Discovery Completed Supports Approval ....................................................................................... 11

    D.   The Experience and Views of Counsel Support the Settlement ................ 11

    E.   The Reaction of the Class has been Positive ............................................... 12

V.   CONCLUSION .......................................................................................................... 13

# TABLE OF AUTHORITIES

Cases

*Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991) ............. 10

*Centuouri v. Experian Info. Sols., Inc.*, 431 F. Supp. 2d 1002 (D. Ariz. 2006) ............. 10

*In re Charles Schwab Corp. Secs. Litig.*, No. 08-1510, 2011 WL 1481424 (N.D. Cal. April 19, 2011) ............. 11

*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ............. 13

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1991) ............. 6, 13

*Dickerson v. Cable Commc'ns, Inc.*, No. 12-cv-12, 2013 WL 6178460 (D. Or. Nov. 25, 2013) ............. 7

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) ............. 11

*Gauci v. Citi Mortg.*, No. 11-cv-01387, 2011 WL 3652589 (C.D. Cal. Aug. 19, 2011) ............. 9

*Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995) ............. 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............. 7

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ............. 12

*Lenox v. Equifax Info. Servs. LLC*, 2007 WL 1406914 (D. Or. May 7, 2007) ............. 10

*Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) ............. 5

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............. 12

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ............. 11

*In re Quintus Secs. Litig.*, No. 00-cv-4263, 2006 WL 3507936 (N.D. Cal. Dec. 5, 2006) ............. 1

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ............. 7

*Shames v. Hertz Corp.*, No. 07-cv-2174, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ............. 12

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ............. 6

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............. 11

*Tait v. BSH Home Appliances Corp.*, No. 10-cv-0711, 2015 WL 4537463 (C.D. Cal. July 27, 2015) ............. 13

*Touhey v. U.S.*, No. 08-cv-01418, 2011 WL 3179036 (C.D. Cal. July 25, 2011) ............. 13

N/A

*In re Toys R Us-Delaware, Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014) ............................................................................................. 7

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prod. Liab. Litig.*, 895 F.3d 597
(9th Cir. 2018) .......................................................................................................................... 8

*In re Wash. Public Power Supply Sys. Secs. Litig.*, 19 F.3d 1291 (9th Cir. 1994) .................. 13

*White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086 (C.D. Cal. 2011) ................... 13

*Zepeda v. PayPal, Inc.*, 2017 WL 1113293 (N.D. Cal. March 24, 2017) ................................ 12

Rules & Statutes

15 U.S.C. § 1681, *et seq.* ..................................................................................................... *passim*

Other Authority

EEOC, *Enforcement Guidance on the Consideration of Arrest & Conviction Records in
Employment Discrimination* (Apr. 25, 2012) ........................................................................... 9

Newberg on Class Actions § 11:41 (4th ed. 2006) ..................................................................... 7

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.     INTRODUCTION**

On June 29, 2018, the Court granted preliminary approval of the proposed settlement of this action.  (ECF No. 66.)  The Court found on a preliminary basis that the terms of the settlement are "fair, reasonable, and adequate." (*Id.*)  The settlement provides meaningful injunctive relief which creatively and effectively solves the problems identified by this lawsuit.  In addition, the settlement provides monetary relief for class members which exceeds that provided in settlements of similar claims.  The response from the Settlement Class Members confirms that the settlement is fair and should be approved – out of 96,040 Class Members, only two have opted out, none have objected, and as of October 26, out of the group of Class Members required to return a Claim Form to receive a payment, 4,553 (10.8 percent) have done so.[1]  This supports a final analysis that the settlement is fair, reasonable, and adequate.  *See In re Quintus Secs. Litig.*, No. 00-cv-4263, 2006 WL 3507936, at *3 (N.D. Cal. Dec. 5, 2006) ("the absence of any objections or requests for exclusion among a class of this size [about 20,000] demonstrates the overall reasonableness of this settlement").

Accordingly, Plaintiff Gregory Howell ("Plaintiff"), individually and on behalf of the Settlement Class, respectfully requests that the Court enter an order granting final approval of the proposed Settlement Agreement with Defendant Checkr, Inc. ("Defendant") which fully resolves this class action brought under the Fair Credit Reporting Act ("FCRA").

**II.    STATEMENT OF THE ISSUE TO BE DECIDED**

Whether the Settlement Agreement should receive final approval.

---

[1] The deadline for submission of Claim Forms was October 24, thus this number represents the total valid Claim Forms as of October 26, but Claim Forms are continuing to be reviewed for validity, and additional Forms may still arrive in the mail with an October 24 or earlier postmark.  The parties will provide a final claims number, and a final count of valid claims, to the Court prior to the Final Fairness Hearing.

-1-

**III. RELEVANT FACTS**

  **A. S**UMMARY OF **C**LAIMS AND **L**ITIGATION **H**ISTORY

  The substance and history of this class action is recounted in detail in Plaintiff's preliminary approval and fee petition papers and will be only briefly summarized here. (*See* ECF Nos. 55, 71.) Plaintiff alleged that Defendant, a consumer reporting agency, violated the FCRA by: (1) failing to follow reasonable procedures to assure maximum possible accuracy of the driving records it reported about consumers, 15 U.S.C. § 1681e(b), and (2) by reporting adverse information which was older than seven years and which was not a criminal conviction, 15 U.S.C. § 1681c. (*See generally* Compl., ECF No. 1-1.) Defendant removed the case to federal court (originally filed in San Francisco Superior Court on June 23, 2017), and answered the Complaint on November 3, 2017, denying Plaintiff's allegations. (ECF No. 37.) In its Answer, Defendant denied that it violated the FCRA and denied each of the material allegations of the Complaint. (*Id*.)

  During discovery, the parties exchanged both informal and formal information and document productions. (ECF No. 55-1 ¶ 3.) Defendant provided detailed information about its policies, procedures, and algorithms, and the parties negotiated extensively regarding the production of ESI from Defendant. Class Counsel retained a database expert, who reviewed and refined Defendant's proposed algorithm, and Defendant executed those queries to provide information about the composition of the proposed Class. (*Id.*)

  On March 1, 2018, the parties engaged in a full-day mediation with third-party neutral Rodney Max, Esq. (ECF No. 45.) After a full day of vigorous, arms-length negotiations, the parties were unable to reach a resolution, but engaged in subsequent arms-length negotiations through counsel. With the assistance of Mr. Max, the parties ultimately executed a terms sheet and formalized a class-wide settlement, which was presented to the Court for preliminary approval on May 21, 2018. (ECF No. 55-2.) The Court preliminarily approved the settlement on June 29, 2018 (ECF No. 66), after the parties had submitted amendments to the timeline and notices incorporated in the original Agreement. On

October 8, 2018, in accordance with the Settlement Agreement, Plaintiff moved for approval of his attorneys' fees, costs, Class Representative Service Award, and Settlement Administration Expenses.  (ECF No. 71.)

### B. KEY SETTLEMENT TERMS

The settlement resolves, on a class-wide basis, Plaintiff's claim regarding Defendant's alleged reporting of adverse information older than seven years from the date of the report which is not a criminal conviction.[2]  The Settlement Class consists of all consumers upon whom Defendant produced a consumer report which included records older than seven years from the date of the report, which included the following terms in the "charge type" field: "infraction," "ordinance," "violation," "petty offense," "traffic," "citation," and "civil," herein referred to as "low-level offenses."  (ECF No. 66 ¶ 2.)  In return for the settlement benefits described below, Class Members release claims arising under 15 U.S.C. § 1681c and analogous state laws.[3]

Defendant has agreed to implement several business practice changes that address Plaintiff's claims in this litigation.  (ECF No. 55-2 ¶ 5.)  Defendant will (1) not report low-level offenses older than seven years for at least 18 months, regardless of whether such low-level offenses are criminal in the relevant jurisdiction, and (2) if, after that time period, Defendant decides to resume reporting low-level *criminal* offenses that are older than seven years, it will use data provided by Class Counsel from the settlement claims process, and consult an expert regarding its methodology in resuming reporting these types of records.  The purpose of the injunctive relief is to clear all Class Members' reports of *all* low-level offense records and to ensure that, in the event Defendant resumes reporting the limited set of such records which can lawfully be reported, such reporting is done in such a way as to protect consumers' rights.

---

[2] Plaintiff's other claim, regarding reasonable procedures, is being released by Plaintiff on an individual basis.

[3] In general, §1681c preempts most state laws on this issue, although there is a carve-out for state laws already in effect at the time the relevant FCRA provision was passed.  15 U.S.C. § 1681t(b)(1)(E).

-3-

Should the Court grant final approval, Defendant also will create a common fund consisting of $4,460,000.00 for the benefit of the Settlement Class. (ECF No. 55-2 ¶ 1.21.) This fund will be distributed *pro rata* to all Settlement Class Members eligible to receive a payment, after the deductions for any Court-awarded attorneys' fees and costs, settlement administration costs, and a Named Plaintiff service award. (*Id.* ¶ 8.5.2.) Settlement Class Members will receive an automatic payment where either (1) Defendant reported an "infraction" on the individual that was older than seven years from the date of the report and the infraction was from North Carolina, Florida, or Virginia (states where all "infractions" are non-criminal) and/or (2) the individual's consumer report included infraction and/or other low-level records older than seven years, the Class Member disputed that information with Defendant, and the dispute resulted in a change to the records on their report which were older than seven years. (*Id.* ¶ 1.4.) This automatic payment group accounts for more than half of the Settlement Class. The remaining Settlement Class Members were required to return a Claim Form. These individuals consist of people whose low-level offense records were not infraction records from North Carolina, Florida, or Virginia and/or who did not previously successfully dispute the inclusion of a low-level offense in their consumer report.

Following receipt by the Settlement Administrator of a Claim Form, Defendant transmitted a redacted copy of that Class Member's consumer report to Class Counsel. Class Counsel then reviewed the low-level offense information on the report and performed legal research in order to determine whether the reported offense was criminal under the applicable state law. If the reported offense was not criminal, that Settlement Class Member will receive a payment, should the settlement be finally approved. All eligible Settlement Class Members, including those who receive payment automatically and those whose claims are approved, will receive payments for the same amount.

If settlement checks are not cashed, remaining funds will be donated to the Southern Center for Human Rights and Public Justice. Both organizations are legal advocacy non-

profits who do work to advance enforcement of the FCRA and/or in service of assisting individuals who are facing collateral consequences as a result of interactions with the criminal justice system, and are appropriate *cy pres* recipients. *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011) ("*[C]y pres* distribution must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members."). No portion of the settlement fund will revert to Defendant in any circumstance.

### C. CLASS NOTICE AND REACTION

On July 26, 2018, JND Class Action Administration emailed Notice to the 96,040 Settlement Class Members in accordance with the procedures outlined in the Settlement Agreement. (ECF No. 71-10 ¶ 9.) On July 24, 2018, JND also activated the Settlement Website, www.HowellSettlement.com, and a toll-free telephone line for Class Members with questions. (*Id.* ¶¶ 15, 18.) Further, on August 13, 2018, JND sent a Reminder Email Notice to those whose initial Email Notice was still unopened. (*Id.* ¶ 10.) Additionally, throughout the Notice Period, JND sent Mail Notices to those Settlement Class Members whose Email Notices were either undeliverable or unopened after a certain amount of time had passed, to ensure receipt of Notice by Settlement Class Members. (2d Admin. Decl. ¶¶ 11, 12.)

As of October 26, 2018, there are only **two** opt-outs, and **zero** objections received. (2d Admin. Decl. ¶¶ 22, 24.) Additionally, as of October 26, 2018, out of the 42,030 Class Members required to return a Claim Form to be considered for eligibility for payment, 4,553 have done so, resulting in an approximately 10.8% claims rate. (2d Admin. Decl. ¶ 26.)[4]

Class Counsel have reviewed and made determinations on eligibility for payment for 2,939 Claimants as of October 26, 2018. Of these reports, Class Counsel have determined that 1,618 had low-level offenses older than seven years that were non-criminal

---

[4] The postmark deadline for opt-outs, objections and claims was October 24, 2018, thus there may be updates to these numbers, should some timely-postmarked opt-outs, objections or claims arrive after today's date. Class Counsel will provide final numbers to the Court prior to the Final Approval Hearing.

-5-

in nature on their reports (approximately 55% of Claimants), and are thus eligible for payment. Class Counsel are continuing their review and analysis process as Defendant provides Claimants' reports on a rolling basis, and expects to complete all Claimants' reports in advance of the Final Approval Hearing. Class Counsel will include updated numbers in the supplement to be provided prior to the Final Approval Hearing.

The Settlement Administrator has also ensured compliance with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), providing notice of the proposed settlement to the appropriate officials. (ECF No. 71-10 ¶ 3.)

On October 8, 2018, Plaintiff filed his Motion for Attorneys' Fees, Costs, Class Representative Service Payment, and Settlement Administration Expenses, which JND promptly posted on the Settlement Website for Class Members to access and review. There have been no objections to Plaintiff's Motion for Fees, Costs, and Service Payment.

### D.   RELIEF TO BE PROVIDED AFTER FINAL APPROVAL.

If the settlement is granted final approval, Defendant will deposit the common fund amount within ten business days of the Effective Date. Within fifteen business days of the Effective Date, JND will mail checks to all Settlement Class Members eligible for payment. Should the claims rate and the rate of eligibility of Claimants remain unchanged, if the Court grants the requested attorneys' fees, costs, and Class Representative Service Payment, and after JND's costs are paid, eligible Settlement Class Members will receive approximately $54.88 each.[5] This amount is slightly higher than the amount estimated in Class Members' Notices, which stated the expected recovery would be between $40 and $50.

### IV.   ARGUMENT

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Courts may approve proposed class action settlements if they are found to be "fair, adequate, and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1292

---

[5] The precise amount will be updated in Counsel's supplement filing as well.

-6-

(9th Cir. 1991). The court begins its analysis with an "initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Newberg on Class Actions § 11:41 (4th ed. 2006); *accord*, *Dickerson v. Cable Commc'ns, Inc.*, No. 12-cv-12, 2013 WL 6178460, at *2 (D. Or. Nov. 25, 2013) ("Courts within the Ninth Circuit 'put a good deal of stock in the product of an arms[]length, non-collusive, negotiated resolution.'") (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

The Ninth Circuit has stated that courts should consider several factors as part of the fairness determination, including: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity and duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

For the reasons set forth below, all of the relevant factors weigh in favor of granting final approval to the parties' settlement, and the Court should enter the Final Approval Order, dismiss Plaintiff's and the Settlement Class's claims with prejudice, and approve the settlement payments for distribution.

**A.    THE RELIEF PROVIDED BY THE SETTLEMENT IS SIGNIFICANT.**

The settlement not only offers Settlement Class Members monetary relief that is comparable or exceeds recoveries approved in similar cases, it also provided meaningful non-monetary relief in the form of practice changes that directly address the claims at issue.

Plaintiff sought statutory damages under the FCRA, which provides for damages of between $100 and $1,000 for each willful violation. 15 U.S.C. § 1681n(a)(1). Due to the difficulties inherent in establishing that violations were willful, it is common for FCRA class actions to settle for less than $100 per class member. *See*, *e.g.*, *In re Toys R Us-Delaware, Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438,

-7-

MOTION FOR FINAL SETTLEMENT APPROVAL
Case No. 3:17-cv-04305-SK

453-4 (C.D. Cal. 2014) ("A $5 or $30 award, therefore, represents 5% to 30% of the recovery that might have been obtained.  This is not a *de minimis* amount. Given the likelihood that plaintiffs would have been unable to prove actual damages and the risk that they would have been unable to prove willfulness and recover any damages at all, the court finds that the amount of the settlement weighs in favor of approval.").  The net recovery here of approximately $54.88 per eligible Class Member, supports the fairness of the settlement.

The individual recovery provided is in line with or superior to other settlements of similar claims.  *See, e.g.*, *King v. Gen. Info. Servs.*, No. 10-cv-6850, ECF No. 124 (E.D. Pa. Nov. 4, 2014) (approving §1681c settlement providing class members each $50), *Haley v. TalentWise, Inc.*, No. 13-cv-1915, ECF No. 88 (W.D. Wash. June 16, 2015) (final approval of settlement paying lass members $50 per claim based on reporting of outdated charges); *Smith v. A-Check, Inc.*, No. 16-cv-174, ECF No. 66 (C.D. Cal. July 18, 2017) (approval of settlement with tiered class based on whether outdated information reported was criminal or not, with outdated non-criminal information resulting in $28 per class member, and outdated criminal non-convictions resulting in $114 per class member).  Most of these cases related to the reporting of outdated *criminal* charges which did not result in a conviction.  As a general matter, reporting an outdated criminal charge is more serious than reporting the kinds of low-level civil violations at issue here.  Of prior settlements involving similar claims, the most directly analogous recovery is the $28-per class-member recovery for individuals with non-criminal information on their reports in the *A-Check* case.  This settlement well exceeds the amount provided there.[6]

Moreover, the non-monetary relief is a substantial benefit for the Settlement Class Members as well as for future subjects of consumer reports prepared by Defendant.

---

[6] Nor does any defect arise from the fact that some class members are required to provide additional information on a claim form.  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 613 (9th Cir. 2018) (no defect with settlement that required some class members to "take additional steps to claim their benefits under the settlement").

-8-

Defendant will stop reporting low-level offenses older than seven years from the date of the report altogether for a period of at least 18 months. Should Defendant decide to begin reporting low-level criminal offenses older than seven years from the date of the report in the future, it will be required to review the extensive analysis conducted by Class Counsel of Claimants' reports, and consult with an expert to ensure that its reporting parameters appropriately distinguish between criminal and non-criminal offenses. Class Counsel's expert has valued this important relief at approximately $9.4 million. (*See* ECF No. 71-4.) The weight of the authority is that injunctive relief is unavailable to plaintiffs under the FCRA. *See Gauci v. Citi Mortg.*, No. 11-cv-01387, 2011 WL 3652589, at *3 (C.D. Cal. Aug. 19, 2011) ("District courts in the Ninth Circuit agree that a private party may not obtain injunctive relief under the FCRA."). Accordingly, this benefit is noteworthy, and likely would not have been achievable absent this settlement.

The injunctive relief also furthers important public policy goals. Up to 92% of employers subject their candidates to some form of criminal background screening. EEOC, *Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Discrimination* at 6 (Apr. 25, 2012). Removing potentially outdated and non-reportable records from these background reports is important, both because it ensures compliance with the FCRA, but also because it achieves the important societal goal of allowing people with minor records to successfully obtain employment.

Further, overbroad reporting of infractions has a disparate impact on people of color and people in poverty, who are significantly overrepresented when it comes to the enforcement of laws involving low-level infractions. *See, e.g.*, https://ips-dc.org/wp-content/uploads/2015/03/IPS-The-Poor-Get-Prison-Final.pdf ("For example, in Antioch, African-Americans in 2008 were four times as likely as white Section 8 occupants to be targeted and searched by law enforcement as a result of noncriminal complaints."). Removing these records from reports helps minimize the impact that this disparity has on employment.

### B. PLAINTIFF AND THE SETTLEMENT CLASS WOULD HAVE FACED SUBSTANTIAL RISKS IN THE ABSENCE OF A SETTLEMENT.

There were substantial risks in litigation that could have resulted in no recovery for Plaintiff and the Settlement Class. Plaintiff would have had to win a contested motion for class certification, survive summary judgment motion practice, and ultimately, prevail at trial. Each of these stages, of course, poses risk to Plaintiff's likelihood of success. In particular, Plaintiff faced risk on the issue of willfulness. Unlike many consumer protection statutes, the FCRA is not a strict liability statute. Under the FCRA, a plaintiff can recover only where the defendant has acted negligently or willfully. Where the defendant's violation was at most negligent, recovery is limited to actual damages. *See* 15 U.S.C. §§ 1681n(a)(1); 1681o(a)(1). Therefore, in order to obtain a certain monetary recovery for all member of the class, Plaintiff would have had to prove not only that Defendant violated the FCRA, but that it did so willfully. Throughout this litigation, Defendant has vigorously contested that it willfully (or even negligently, for that matter) violated the FCRA, and indeed, this defense was at least partially borne out in discovery, which demonstrated that Defendant did have algorithmic policies and procedures designed to comply with §1681c. It would have likely been a fact question for the jury whether the alleged flaws in those policies and procedures were sufficiently reckless to qualify as willful under the FCRA. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir.1995) ("The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases."); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir.1991); *Lenox v. Equifax Info. Servs. LLC*, 2007 WL 1406914, *6 (D. Or. May 7, 2007) ("the determination as to whether defendant's action or inaction rises to the level of willfulness so as to violate the statutory obligations of the FCRA is also a question of fact"); *Centuouri v. Experian Info. Solutions, Inc.*, 431 F.Supp.2d 1002, 1007 (D. Ariz. 2006) (declining to enter summary judgment on the issue of willfulness in a case involving the reasonableness of consumer protection procedures).

### C. THE STAGE OF THE PROCEEDINGS AND AMOUNT OF DISCOVERY COMPLETED SUPPORTS APPROVAL.

This action had been vigorously investigated, litigated, and negotiated, at the time of settlement. Prior to mediation, Plaintiff researched and drafted the complaint, after extensive vetting and investigating of potential claims, and the parties exchanged considerable formal and informal discovery, as well as detailed mediation submissions prior to mediating with an experienced third-party neutral. Only after attending a full day mediation and several weeks of further discussions and negotiations through counsel, and with additional assistance from the mediator, was an agreement reached. Consequently, the parties had a clear understanding of the claims and defenses in this action and were able to appropriately evaluate their positions prior to settlement. This further weighs in favor of final approval. *See In re Charles Schwab Corp. Secs. Litig.*, No. 08-1510, 2011 WL 1481424, at *5 (N.D. Cal. April 19, 2011) ("[T]he class settlements were reached … when class counsel had completed discovery and had conducted extensive motion practice and were thus well aware of the issues and attendant risks involved in going to trial as well as the adequacy of the amount of the class settlement.").

### D. THE EXPERIENCE AND VIEWS OF COUNSEL SUPPORT THE SETTLEMENT.

The views of experienced counsel are entitled to considerable weight when deciding to approve a settlement. *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("The fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."). Class Counsel here are experienced and skilled in consumer class actions and FCRA actions in particular. (*See* ECF Nos. 55-1, 55-3, 71-1, 71-2, 71-3, 71-7.) The experience of Class Counsel further weighs in favor of approval of the settlement. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (finding that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation"); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (finding this factor favored settlement approval where "[e]xperienced

counsel on both sides, each with a comprehensive understanding of the strengths and weaknesses of each party's respective claims and defenses, negotiated this settlement over an extended period of time").

### E.  THE REACTION OF THE CLASS HAS BEEN POSITIVE.

Finally, the Settlement Class has reacted well to the settlement. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).  There have been ***zero objections*** and only two opt-outs received from the 96,040 Class Members.

Further, 4,553 Settlement Class Members returned Claim Forms as of October 26, 2018, for a claims rate of 10.8%.  The use of a claim form was appropriate here as the group of Class Members required to return the form had low-level offenses older than seven years reported by Defendant from a multitude of states (36 in Class Counsel's review to date), which required a state-by-state, offense-by-offense analysis to determine if the offense reported was criminal or not, and thus whether the reporting of the offense was permissible under the FCRA.  (*See* ECF No. 55, pp. 5-6.)  Moreover, the claims submission process was easy to follow, simply requiring claimants to go to the Settlement Website, click a clearly labeled link, and enter claim identification information, their name, address, phone, and email, or to do the same on a pre-paid postcard if they received a Mail Notice.  The claims filing rate as of October 26, 2018 is 10.8%.  This rate is higher than those approved in other settlements in this Circuit and is indicative of the strength of the settlement and the notice program. *See Shames v. Hertz Corp.*, No. 07-cv-2174, 2012 WL 5392159, at *14 (S.D. Cal. Nov. 5, 2012) (granting final approval of settlement with 4.9% claims rate); *Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *15-16 (N.D. Cal. March 24, 2017) (finding in consumer protection case that a 3.8% claims rate indicated that the email "notice process has been remarkably successful – and the Settlement Class's reaction to the Settlement has

-12-

1  been overwhelmingly positive."); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 589
2  (N.D. Cal. 2015) (approving settlement and finding 5.9% claims rate to indicate an overall
3  positive reaction to the settlement); *White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d
4  1086, 1100 (C.D. Cal. 2011) (approving settlement with 5% response rate); *Tait v. BSH
5  Home Appliances Corp.*, No. 10-cv-0711, 2015 WL 4537463, at *8 (C.D. Cal. July 27,
6  2015) (approving settlement with 3% claims rate); *Touhey v. U.S.*, No. 08-cv-01418, 2011
7  WL 3179036, at *7-8 (C.D. Cal. July 25, 2011) (approving settlement with 2% claims rate).

The positive reaction of the Class to the settlement supports its fairness, and thus this factor weighs in favor of approval. *See City of Seattle*, 955 F.2d at 1291-96; *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004); *In re Wash. Public Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1294-95 (9th Cir. 1994).

## V.   CONCLUSION

In short, the settlement provides meaningful relief to the Class, both in the form of monetary payments and injunctive relief that effectively address the allegations raised in this action. Class Members have reacted positively to the settlement and its terms are fair and reasonable. Based on the foregoing, the Court should grant final approval.

Date: October 29, 2018                    BERGER MONTAGUE PC

/s/E. Michelle Drake
E. Michelle Drake (*pro hac vice*)

ATTORNEYS FOR PLAINTIFF

-13-

MOTION FOR FINAL SETTLEMENT APPROVAL
Case No. 3:17-cv-04305-SK